1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NEW YORK
2

3    --------------------------------X
                                     :
4    KYLE FREISTAT,                  :
                                     :   17-CV-05870 (RRM)
5                    Plaintiff,      :
                                     :
6               v.                   :
                                     :   225 Cadman Plaza East
7    NYPD, et al.,                   :   Brooklyn, New York
                                     :
8                    Defendants.     :   March 15, 2018
     --------------------------------X
9
       TRANSCRIPT OF CIVIL CAUSE FOR INITIAL TELEPHONE CONFERENCE
10                 BEFORE THE HONORABLE LOIS BLOOM
               UNITED STATES MAGISTRATE JUDGE
11

12   APPEARANCES:

13   For the Plaintiff:        KYLE FREISTAT, Pro Se
                               #4411705961
14                             Brooklyn Detention Complex
                               275 Atlantic Avenue
15                             Brooklyn, New York 11201

16
     For the Defendants:       SAMANTHA MILLAR, ESQ.
17                             CAROLYN DEPOIAN, ESQ.
                               New York City Law Department
18                             100 Church Street
                               New York, New York 10007
19

20
     Court Transcriber:        SHARI RIEMER, CET-805
21                             TypeWrite Word Processing Service
                               211 N. Milton Road
22                             Saratoga Springs, New York 12866

23

24

25


     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service

2

1  (Proceedings began at 9:31 a.m.)

2          THE COURT:  Civil Cause for Initial Telephone

3  Conference, Docket No. 17-CV-5870, <u>Freistat v. New York City</u>

4  <u>Police Department, et al.</u>

5          Will the parties please state your names for the

6  record?

7          MR. FREISTAT:  Kyle Freistat.

8           Good morning, Your Honor; Samantha Millar from the

9  New York City Law Department for defendant Gasperetti.

10         MS. DEPOIAN:  Good morning, Your Honor.  This is

11  Carolyn Depoian.  How are you?  Also for Gasperetti.

12         THE CLERK:  The Honorable Lois Bloom presiding.

13         THE COURT:  Good morning, Mr. Freistat.  This is

14  Magistrate Judge Bloom.  How are you today, sir?

15         MR. FREISTAT:  I'm fine.  I can't complain.

16         THE COURT:  Good.

17         MR. FREISTAT:  I've been better.

18         THE COURT:  Thank you.  Good morning, Ms. Millar and

19  Ms. Depoian.  Nice to hear your voices again.

20         This is an initial telephone conference in

21  plaintiff's civil rights action pursuant to 42 United States

22  Code Section 1983.  Mr. Freistat, you're alleging that

23  defendant Officers Gasperetti and Arlistico used excessive

24  force against you in violation of your constitutional rights.

25  The defendants filed a motion to stay the case on March 1st

3

1    because your underlying criminal proceedings are still

2    pending.  And I wanted to get first all of the defendants

3    served before there was any stay entered and two, I wanted to

4    get you on the phone so that you would understand what is

5    going on with your case.

6           MR. FREISTAT:  Yes, Your Honor.

7           THE COURT:  So you're alleging, sir, that on July

8    26, 2017, you were stopped while driving a car by these two

9    officers, and you allege that these officers used excessive

10   force against you including strangling you, beating your body,

11   face, and skull and leaving marks of a permanent nature.  And

12   you allege that you were beaten so badly that you could barely

13   stand during your arraignment and you had to be held up by two

14   court officers.  And then you allege the police, prosecutors,

15   and judge all engaged in misconduct that have left you

16   permanently injured and you're looking for $7 million.

17          So you have every right to proceed in your case,

18   sir, but when there is a criminal case pending generally

19   speaking if it arises out of the same claim -- the same

20   incident -- if your criminal case arising out of your arrest

21   on July 26th is still pending the defendants will frequently

22   ask the court to stay the civil rights case for two reasons.

23   One, you're not supposed to be able to bring a civil rights

24   action against police if the civil rights violation would

25   undermine the validity of any conviction.  Well, there is no

4

1  conviction so it's clear that you're bringing a case that's

2  timely filed against two officers for beating you while they

3  arrested you.

4          MR. FREISTAT:  Exactly.

5          THE COURT:  But the other part of the case is that

6  if Gasperetti and Arlistico are going to be part of the

7  criminal case in any way, you have certain rights, Mr.

8  Freistat, in a criminal case such as the right not to testify

9  and the right not to answer questions.  And in a civil case,

10  if you were to proceed now rather than having this case

11  stayed, meaning wait for the criminal case to conclude, you

12  might have to answer questions here without having a lawyer

13  because in this case you're the plaintiff trying to vindicate

14  your rights whereas in the criminal case you have

15  constitutional rights not to speak and not to testify, and the

16  Government bears the burden of proof beyond a reasonable doubt

17  that you are guilty of the crime for which you are accused.

18  So bringing a civil case at the same time that there is a

19  criminal case is a little complicated.

20          MR. FREISTAT:  Yeah.

21          THE COURT:  And that you have brought the case stops

22  the statute of limitations which for a civil rights case is

23  three years from the event.  So I wanted to get the defendants

24  served with your complaint so that they would know that you

25  had brought a timely civil rights complaint against them.

1          MR. FREISTAT:  Yes, ma'am.

2          THE COURT:  But then I was going to stay the case

3   waiting for the conclusion of your criminal matter.

4          MR. FREISTAT:  Which is -- which is no telling when

5   that's going to be.  And for the record and for the record

6   only I have no problem answering questions for you because

7   evidently, you know what I mean, I've been accused of some

8   vicious, heinous acts, lied on constantly, and continue to be

9   lied on on some serious charges.  I'm fighting for my life.

10  So regardless of that end or the other, Your Honor, I have no

11  problem sitting in front of anybody and stating what happened

12  that day because guess what?  They have no problem telling the

13  opposite of what happened that day.  I have no problem sitting

14  in front of you and answering the questions, whatever

15  questions you ask me.  I would be glad to do it.

16         THE COURT:  Mr. Freistat -- Mr. Freistat, I'm not

17  the one who would be asking you the questions.

18         MR. FREISTAT:  Well, for whoever, Your Honor.

19         THE COURT:  Well, again, it would be the defendants'

20  lawyers, and you would be unrepresented because where you have

21  the right to counsel in a criminal case, you have no right to

22  counsel in a civil rights action where you are the one trying

23  to vindicate your rights.

24         MR. FREISTAT:  Yeah.

25         THE COURT:  And as much as I believe you, sir, that

6

1  you're being earnest when you tell me that you have no problem

2  because they're the ones that are lying, I don't want you to

3  compromise your criminal case.

4          MR. FREISTAT:  Yeah.

5          THE COURT:  Because you are dealing with your civil

6  case.

7          MR. FREISTAT:  Okay.  Okay.

8          THE COURT:  Do you hear what I'm saying?  I'm not

9  doubting --

10          MR. FREISTAT:  I understand, Your Honor.

11          THE COURT:  I'm not doubting --

12          MR. FREISTAT:  I fully understand.

13          THE COURT:  -- that you want this to proceed.  But

14  what I'm saying to you is that there are certain things in the

15  criminal matter --

16          MR. FREISTAT:  Yeah.

17          THE COURT:  -- that you are fighting for your life.

18  You're absolutely right, and that you shouldn't compromise any

19  of your arguments in your -- in your criminal case by having

20  previously --

21          MR. FREISTAT:  I understand.

22          THE COURT:  -- committed under oath to certain

23  testimony in your civil case.

24          MR. FREISTAT:  I fully understand.  I fully

25  understand.

7

1        THE COURT:  Okay.  So I wanted to get you on the

2  phone so that you didn't think that the Court just didn't care

3  and was granting whatever the defendants put in front of the

4  Court.  But I want you to understand that, you know, again the

5  case was already terminated against the NYPD, the Department

6  of Correction, and the Department of Justice, and I want you

7  to understand why Mr. Freistat.

8        MR. FREISTAT:  Yes.

9        THE COURT:  The statute that you are bringing this

10  case under, 42 United States Code Section 1983, says that any

11  person acting under color of law who violates someone's

12  constitutional rights can be held liable.

13        MR. FREISTAT:  Yes.

14        THE COURT:  I'm boiling it down but that essentially

15  what the statute says.

16        MR. FREISTAT:  Yes.

17        THE COURT:  And NYPD, Department of Correction, and

18  Department of Justice are not a person.  You can only sue

19  individuals acting --

20        MR. FREISTAT:  Okay.

21        THE COURT:  -- under color of law.  You can't sue a

22  hospital, you can't sue a prison.  Under the Civil Rights

23  Statute, you can only name a person acting under color of

24  state law.  Do you understand?

25        MR. FREISTAT:  Fully understood.

8

1          THE COURT:  Okay.  So that's why the Court

2  terminated the case against those institutions, NYPD,

3  Department of Correction, Department of Justice are not a

4  person.  Okay?

5          MR. FREISTAT:  Okay.

6          THE COURT:  So now they have moved to stay the --

7  because of the ongoing criminal investigation, and I want you

8  to understand.  Your case has been filed.  We are getting

9  service made on both Arlistico and Gasperetti so that if and

10 when you are able to resolve the criminal case you will not

11 have a time issue in your case against those two officers.

12         MR. FREISTAT:  Thank you.

13         THE COURT:  You will have preserved your rights to

14 pursue this civil rights action against these two officers.

15         MR. FREISTAT:  Thank you.

16         THE COURT:  Ms. Millar, my question is there should

17 be body cameras or these should be a camera on the vehicle.

18 What about video of this event?

19         MS. MILLAR:  Your Honor, at this time we don't have

20 any information about whether the officers were wearing body

21 cams or dash cams.

22         THE COURT:  I want that to be something you

23 immediately try to preserve.  If there's a body cam or a dash

24 cam, I want that video preserved, and I want you to write to

25 me.  I'll give you two weeks to do that.

1              MS. MILLAR:  Yes, Your Honor.

2              THE COURT:  So by the -- by the 29th I want there to

3    be a letter whether or not there's video or any sort of

4    surveillance.

5              Mr. Freistat.

6              MR. FREISTAT:  Yes, ma'am.

7              THE COURT:  Where did --

8              MR. FREISTAT:  I was about to ask the same question.

9    Why did that car didn't have no video camera.

10             THE COURT:  Well, we'll see if it did.  So Mr. --

11   without saying a whole lot, you say that they approached you

12   while you were in a stationary position in your vehicle.

13             MR. FREISTAT:  Yes, and I handed them the paperwork

14   for the car and my license.  And they run the license, they

15   run the car -- the car paperwork, and even in the police

16   report those are missing.  It's nothing in the police report

17   shows that they run the car and all of that.

18             THE COURT:  Mr. Freistat, start me back at square

19   one.  Where were you, sir?

20             MR. FREISTAT:  I was at between 176 and Brinkerhoff.

21   I stopped on the stop sign that they said I run.  I stopped --

22   I came to the stop sign --

23             THE COURT:  Sorry, sorry, sorry, sorry.  Slow down.

24   176 and Brinkerhoff?

25             MR. FREISTAT:  Yes, in Queens -- Jamaica, Queens.

```
                                                          10
 1              THE COURT:  And -- okay.  And were you in your own

 2   car?

 3              MR. FREISTAT:  No, I was in a friend's car.

 4              THE COURT:  And what time of day was it, sir?

 5              MR. FREISTAT:  I think it was a little after 2:00.

 6              THE COURT:  2:00 in the morning or 2:00 in the

 7   afternoon?

 8              MR. FREISTAT:  No, 2:00 in the afternoon.

 9              THE COURT:  Okay.  And they say you didn't stop at a

10   stop sign?

11              MR. FREISTAT:  Yes, they said I did like a puzzle --

12   like a stop-and-go.

13              THE COURT:  Okay.

14              MR. FREISTAT:  Which at that specific stop sign

15   there's no way you could do a stop-and-go because it's the --

16   you got incoming traffic that come towards you.  So if you do

17   a stop-and-go you could literally cause a accident.

18              THE COURT:  Okay.  So they --

19              MR. FREISTAT:  I know -- okay.

20              THE COURT:  They pull you over.

21              MR. FREISTAT:  Yeah, after they pulled me over they

22   say the reason that they pulled me is for the broke -- for a

23   broken taillight and for failure to stop on a stop sign.

24   Okay.  All right.  They asked for the -- for the license,

25   registration, and et cetera, which I handed over to them.
```

1   Everything checked out.  After everything checked out I was

2   good to go.  They tell me I'm free to go.  They asked me a

3   couple of questions about addresses, and I tell them I don't

4   know those addresses.  Okay.  After I tell them I don't know

5   those addresses I was all right, cool, I've checked out.  I

6   had a family member CO badges and the Social in it.  That's

7   when they started harassing me about the Social.  After --

8            THE COURT:  Wait, wait, wait, wait.

9            MR. FREISTAT:  After --

10            THE COURT:  Stop.  You had a family member's CO

11   badge in your wallet?

12            MR. FREISTAT:  Yes.  Yes.  And the Social taped to

13   it.  So he started questioning me about the Social --

14            THE COURT:  Wait, wait, wait, wait.  Social

15   Security number?

16            MR. FREISTAT:  Yeah, Social Security card.

17            THE COURT:  Okay.

18            MR. FREISTAT:  Taped to it.  That's how I got it.

19   So I tell him that's my family member.  If they want to allow

20   me to walk with the Social and the -- and the badge, that's

21   what -- that's how I got it, and that's how I walk with it.  I

22   never removed it, and that's what it started from.  That's

23   where he started harassing me.

24            THE COURT:  I'm sorry.  Mr. Freistat, I just want to

25   make sure I understand.  So the stop happened, everything

1   cleared on the car, they said you're free to go.

2           MR. FREISTAT:  Yes.  Because my -- the car was

3   clean, the license was clean, and the only reason why he start

4   harassing me now is because of the badge -- and the Social and

5   the badge.

6           THE COURT:  Where was that badge and that Social

7   Security --

8           MR. FREISTAT:  It was right on my lap.  I was --

9           THE COURT:  It was right on your -- I'm sorry?

10          MR. FREISTAT:  It was on my lap.

11          THE COURT:  It was on your lap.

12          MR. FREISTAT:  Yeah, I opened it to put the Social

13  -- to put the license back in.

14          THE COURT:  Okay.  So, look, I don't want to ask

15  you --

16          MR. FREISTAT:  They didn't take no pictures --

17          THE COURT:  Mr. Freistat, I don't want to ask you

18  more questions because again you have an attorney --

19          MR. FREISTAT:  Yeah.

20          THE COURT:  -- in the criminal case, and I'm sure he

21  or she is going to want you to keep your mouth shut about any

22  of the things that led to your arrest.  Is this incident what

23  causes you now to be charged in a criminal case?

24          MR. FREISTAT:  Yes.

25          THE COURT:  I don't want to -- I don't want to in

1  any way influence that criminal case.  So again, I appreciate

2  you giving me just the amount of information you gave me now.

3  Mr. Freistat, how old a man are you, sir?

4          MR. FREISTAT:  Thirty-nine years old, ma'am.

5          THE COURT:  Okay.  And you've been in custody since

6  this event?

7          MR. FREISTAT:  Yes, and for the record, there was no

8  -- I was given no ticket, no summons for the brake light or

9  the stop sign -- or the failure to stop at the stop sign.

10         THE COURT:  So one of the -- one of the things which

11  is what I was trying to explain to you is that in a civil

12  rights action, here you have a claim that they used excessive

13  force against you which --

14         MR. FREISTAT:  Yes, they did.

15         THE COURT:  -- doesn't affect the validity of any

16  conviction.  Somebody could be convicted of a crime and still

17  bring a civil rights action saying that they were beaten up by

18  the police without reason, that they used unreasonable,

19  excessive force when they were arrested.  But I'm hearing from

20  you that you should have never been arrested as part of what

21  your claim is; is that correct?

22         MR. FREISTAT:  Exactly.

23         THE COURT:  So in order to make that claim that you

24  never should have been arrested, that's a false arrest claim

25  which is --

1          MR. FREISTAT:  Yes.

2          THE COURT:  -- different than an excessive force

3   claim, and you can't bring a false arrest claim unless you are

4   vindicated of the charges.  And so --

5          MR. FREISTAT:  No problem.

6          THE COURT:  -- I want you to understand this --

7          MR. FREISTAT:  But, Your Honor --

8          THE COURT:  -- even if they ask you to plead to

9   something else and give you time served, if you plead to

10  something else the likelihood is you won't be able to bring a

11  false arrest claim.

12         MR. FREISTAT:  Okay.  Okay.  I understand, Your

13  Honor.

14         THE COURT:  Okay?  I'm not telling you what to do,

15  Mr. Freistat.

16         MR. FREISTAT:  I know.  I know.  I know.

17         THE COURT:  But I want you to know that your

18  excessive force claim could go forward no matter what

19  happens --

20         MR. FREISTAT:  Yes.

21         THE COURT:  -- with your criminal charges.  But

22  your --

23         MR. FREISTAT:  Fully understood.

24         THE COURT:  But your false arrest claim would not be

25  able to go forward unless you're vindicated and all the

1  charges are dismissed.

2          MR. FREISTAT:  Yeah.

3          THE COURT:  If they get you to plead to anything

4  regarding those charges then that will undermine your ability

5  to bring this civil rights claim for false arrest.

6          MR. FREISTAT:  Yes.

7          THE COURT:  You could still proceed on your

8  excessive force claim.  So I'm directing Ms. Millar to get the

9  body cam or the video cam regarding this incident.  I would

10  also like you -- I know you just gave me Arlistico's service

11  address, so we're sending the marshals to serve Police Office

12  Anthony Arlistico, Mr. Freistat.

13          MR. FREISTAT:  Thank you.

14          THE COURT:  And that's an order that I just signed

15  yesterday.

16          MR. FREISTAT:  Thank you, Your Honor.

17          THE COURT:  So again, we are moving it but I do want

18  you to know once I get that both these defendants have been

19  served, is there anybody else that you're trying to name?  You

20  can't name the prosecutor, you can't name the judge.  But you

21  may be able to name -- I don't know if there was anybody else

22  involved in the false arrest, and you should think about that.

23  You have three years from the date of the incident to bring a

24  claim.  The incident happened July 26, 2017, so you're still

25  well within your time.

16

1          MR. FREISTAT:  Yes.

2          THE COURT:  But I really do want you, Mr. Freistat,

3  to focus your energy with your attorney on your criminal

4  matter, okay?

5          MR. FREISTAT:  I will.  Thank you.

6          THE COURT:  Okay.  So I am directing the City to by

7  two weeks write a letter to the Court with Mr. Freistat

8  getting a copy of -- that they've made a diligent search for

9  body cam or for the video taken from the officer's car.  And

10  if there was video taken I do want it to be produced, and if

11  there wasn't video taken I want there to be an explanation in

12  the letter why there is no video.

13          MR. FREISTAT:  Thank you.

14          MS. MILLAR:  Yes, Your Honor.

15          THE COURT:  And, Mr. Freistat, again --

16          MR. FREISTAT:  Yes, ma'am.

17          THE COURT:  -- once I get both officers served I am

18  going to stay the matter until your criminal proceedings have

19  been adjudicated so that you don't prejudice yourself in your

20  criminal case.

21          MR. FREISTAT:  Thank you, ma'am.  God bless you,

22  ma'am.  Thank you.

23          THE COURT:  Well, again, Mr. Freistat, I'm not

24  giving you what you want.  You want to win both your criminal

25  case and your civil case.  I'm just telling you I don't want

1 you to harm yourself because you're moving forward on your

2 civil case.  And you'll speak to your lawyer on your criminal

3 case.  They would tell you you don't want to harm yourself by

4 making statements even though I believe you that you want to

5 tell the truth, your criminal case is more important right

6 now.

7        MR. FREISTAT:  That's all I have in this matter

8 here.  Even if -- even if they take the opposite and they find

9 me guilty for something I did not do, at least I know I tell

10 the truth of what happened that day so it won't happen to

11 another person.

12        THE COURT:  Well, again, Mr. Freistat --

13        MR. FREISTAT:  You know, I just want to --

14        THE COURT:  Mr. Freistat --

15        MR. FREISTAT:  Yeah.

16        THE COURT:  -- the other thing that you'll probably

17 have to sign but not just yet is if you asked for any medical

18 care.

19        And I guess I should tell you to do that now as

20 well, Ms. Millar.  He's saying that he was so badly beaten

21 that he couldn't stand during the arraignment and had to be

22 held up by court officers.  So you --

23        MR. FREISTAT:  My criminal lawyer knows this because

24 I was supposed to go back to the hospital and the judge asked

25 them to give me some water or some food, which they denied me,

1  and they -- I was -- my due process was violated.  I was

2  arraigned regardless of my condition.  It was [inaudible].

3          THE COURT:  Well, again, I'll ask you to work with

4  your attorney, since you're still in touch, to get the names

5  of who those court officers are because they may be witnesses.

6  They would not likely be defendants because they didn't cause

7  you the harm that you're alleging.

8          MR. FREISTAT:  Yeah.

9          THE COURT:  But if you're saying that were your mug

10 shots taken while you were beaten so that there's going to be

11 some proof in your mug shots that you were beaten?

12         MR. FREISTAT:  Yes.

13         THE COURT:  What are the marks of the permanent

14 nature?

15         MR. FREISTAT:  I have a big mark on my skull, a mark

16 on the side of my -- right beside my eye, one right beside my

17 ear, and I've got scars all over my -- both hands.  And I had

18 a fractured foot.

19         THE COURT:  Were you taken to the hospital?

20         MR. FREISTAT:  Yes, I was taken to Jamaica Hospital.

21         THE COURT:  So let's get releases by the same date,

22 Ms. Millar, for Jamaica Hospital's record just because that

23 always takes forever.

24         And did they also see you at Rikers or at --

25         MR. FREISTAT:  Yes, they did.  Yes, they did.

```
1              THE COURT:  Okay.  So let's get releases for both
2    Jamaica Hospital.
3              Any other --
4              MR. FREISTAT:  They sent me to VCBC.  I was sent to
5    VCBC at the time.
6              THE COURT:  Anything on Rikers would be the health -
7    -
8              MR. FREISTAT:  Same, yeah, yeah.  Precisely.
9              MS. MILLAR:  Noted, Your Honor.  We may have a
10   release already for Jamaica, but we'll confirm.  And we'll
11   certainly get the releases out to Mr. Freistat if we don't
12   have them already.
13             THE COURT:  So, Mr. Freistat, they would be in
14   charge of getting the medical records.
15             MR. FREISTAT:  Thank you.
16             THE COURT:  And Vernon C. Bain is still a part of
17   Rikers, isn't them both --
18             MR. FREISTAT:  Yes.
19             THE COURT:  -- considered part of Rikers, Ms.
20   Millar?
21             MS. MILLAR:  Yes, we believe so, Your Honor.
22             THE COURT:  Okay.  So you'll get all of the medical
23   records so that we'll have those.  And if there are mug shots,
24   I believe you should get the color mug shot because he's
25   saying that it will show the injuries to his head, okay?
```

20

```
 1              MS. MILLAR:  Yes, Your Honor.
 2              THE COURT:  Okay.  Mr. Freistat, we've done as much
 3    as we can for today.
 4              MR. FREISTAT:  Thank you.
 5              THE COURT:  Any other questions today before we
 6    adjourn, sir?
 7              MR. FREISTAT:  That will be fine.  Thank you.
 8    You've done enough.  God bless you, and I thank you for doing
 9    this for me.
10              THE COURT:  Well, Mr. Freistat --
11              MR. FREISTAT:  [Inaudible], Your Honor.
12              THE COURT:  -- one step at a time.
13              MR. FREISTAT:  Yes.
14              THE COURT:  Keep focused and cooperate --
15              MR. FREISTAT:  I will.  I --
16              THE COURT:  -- with your defense attorney.
17              And anything further, Ms. Millar and Ms. Depoian?
18              MS. MILLAR:  No, Your Honor.  Thank you very much.
19              THE COURT:  Then this matter is adjourned.  And once
20    I see that there has been service made on both defendants and
21    they have responded you could renew your motion to stay.  And
22    then at that point, I will stay it and set it on a status
23    conference for when Mr. Freistat tells me that the charges
24    against him have been adjudicated.  With that, we are
25    adjourned.  Thank you.
```

21

1          MR. FREISTAT:   Thank you.

2          MS. MILLAR:   Thank you, Your Honor.   Have a nice --

3     (Proceedings concluded at 9:55 a.m.)

4                          *  *  *  *  *  *

22

1         I certify that the foregoing is a court transcript

2    from an electronic sound recording of the proceedings in the

3    above-entitled matter.

4

5

6    _____

7            Shari Riemer, CET-805

8    Dated:  April 8, 2018

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25