UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x

KYLE FREISTAT,

                                   Plaintiff,

           -against-

DANIEL GASPERETTI and ANTHONY ARLISTICO,

                                  Defendants.

--------------------------------------------------------------------x

**STATEMENT PURSUANT
TO LOCAL CIVIL RULE
56.1**

17 CV 05870 (RPK)(LB)

        Defendants Daniel Gasperetti and Anthony Arlistico as their Statement Pursuant

to Local Civil Rule 56.1, state the following material facts[1] to which defendants contend there

are no genuine issues to be tried.

**I.**       **Plaintiff's July 26, 2017 Car Stop By Defendants**

        1.   On the afternoon of July 26, 2017, defendants Detective Daniel Gasperetti and

Officer Anthony Arlistico turned on their police lights and siren to pull over plaintiff Kyle

Freistat, a.k.a. Joel Burnett, who was driving a motor vehicle in the vicinity of Sayers Avenue,

Jamaica, New York. See Complaint, p. 4 of 8, Declaration of Morgan C. McKinney dated

September 9, 2020 ("McKinney Decl."), Exhibit "A"; see also Criminal Court Complaint,

McKinney Decl., Exh. "B.; see also Excerpts from the Transcript of the Deposition of Plaintiff

---

[1] Defendants adopt the facts set forth herein only for purposes of the motion for summary judgment and reserve the right to present different and/or conflicting facts at trial in this matter. See Vasconcellos v. City of New York, 12 Civ. 8445(CM)(HBP), 2015 U.S. Dist. LEXIS 121572, at *4 (S.D.N.Y. Sept. 9, 2015) (Local Civil Rule 56.1 "means a party can 'admit' facts that it intends to dispute at trial without suffering any prejudice – the 'admission'….neither binds the party going forward if the motion is denied nor can it be admitted in evidence at trial.").

Kyle Freistat ("P. Dep."), dated June 29 and July 14 2020, McKinney Decl., Exh. "C," pp. 37: 13-18; 68: 4-17; 74:17-25 through 76:1-2.

2. Plaintiff was the only individual present in the motor vehicle. P. Dep., McKinney Decl., Exh. "C," at p. 68:4-7.

3. Plaintiff recognized Detective Gasperetti and Officer Arlistico to be police officers because of the flashing police lights and sirens on their vehicle; and because the officers were wearing visible police shields around their necks and police vests when they approached plaintiff's vehicle. Id. at pp. 75:11-18; 82:16-25; and 83:1.

4. Detective Gasperetti approached the driver's side of plaintiff's vehicle and Officer Arlistico approached the passenger's side. Id. at pp. 76:16-17.

5. Plaintiff rolled down the driver's side window. Id. at pp. 85:22-25 and 86:1-2.

6. Detective Gasperetti asked plaintiff for his license and registration. Id. at pp. 85:22-25 and 86:1-20.

7. Plaintiff asked why he was being pulled over. P. Dep., McKinney Decl., Exh. "C," at pp. 85:22-25 and 86:1-3.

8. Detective Gasperetti informed plaintiff that he had observed plaintiff run a stop sign and that a taillight was out on plaintiff's vehicle. Id. at pp. 85:22-25 and 86:1-12.

9. Plaintiff can neither confirm nor deny whether the vehicle's taillight was out as he had not conducted an inspection of the vehicle that day. Id. at pp. 68:23-25; 69:1-3; 87:22; and 88:1-10.

10. Plaintiff then handed Detective Gasperetti a forged Virgin Island's license using the alias DeAndre Buchonan. Id. at pp. 88:11-25; and 89:1-9.

11. Plaintiff's purported given name at birth is Joel Burnett. Id. at pp. 15:1-2.

12. However, plaintiff admits to using multiple aliases: Kyle Freistat, the alias he used to file this lawsuit; and DeAndre Buchonan, the alias which appears on the the forged Virgin Island's license he presented to the police on July 26, 2017 and which appears in his Jamaica Hospital medical records, related to this incident. Id. at pp. 15-21; see McKinney Decl. Exh. "A," Complaint; see also McKinney Decl. Exh. "G," P. Jamaica Hospital medical records.

13. After inspecting the forged Virgin Island's license, Detective Gasperetti asked plaintiff if he had any other form of identification. Id. at pp. 90:6-16.

14. Plaintiff then handed Detective Gasperetti a fake social security number, written on a card, that was provided to plaintiff when he first purchased the fake Virgin Island's driver's license. Id. at pp. 19:17-25 through 21:1-17; and 90:6-25 through 92:1-6.

15. Detective Gasperetti and Officer Arlistico went back to their police vehicle and ran the fake identification that plaintiff provided. Id. at pp. 95:6-25 and 96:1-5.

16. Detective Gasperetti and Officer Arlistico returned to plaintiff's vehicle and informed him that a warrant had come up under the fake identification plaintiff had provided. Id. at pp. 95:6-25 and 96:1-5.

17. Plaintiff admits that a warrant did come up under the identification he provided the police. Id. at pp. 95:6-25 and 96:1-5.

18. Plaintiff also handed Detective Gasperetti a fake Police Benevolent Association "PBA" badge, and admits to lying to the officers that a family member gave him the badge in order to avoid getting in trouble. Id. at pp. 99:10-25 through 102:1-17.

19. Plaintiff testified that at no point during the July 26, 2017 incident, did Detective Gasperetti or Officer Arlistico reach their hands inside of plaintiff's pockets or conduct a pat down of plaintiff. Id. at pp. 345:11-18.

20. Plaintiff testified that different officers, other than the defendants, conducted plaintiff's search incident to arrest. Id. at pp. 343:8-25 through 345:1-18.

21. At most, plaintiff took personal items out of his own pockets and placed them on his lap or the car door, which the officers then took and placed on the roof of the car. Id. at pp. 112-114 and 345.

22. Plaintiff never observed Detective Gasperetti or Officer Arlistico conduct any type of search of the vehicle. Id. at pp. 343:8-25 through 345:1-18.

23. Detective Gasperretti and Officer Arlistico asked plaintiff to get out of the vehicle approximately four times and each time plaintiff refused. Id. at pp. 114:4-25 through 116:1-22.

24. Detective Gasperretti then began pulling on plaintiff's left upper arm in an attempt to remove him from the vehicle. Id. at pp. 116:19-25 through 117:1-9.

25. Plaintiff planted his feet and held his body in the car to prevent Detective Gasperetti from removing him. Id. at pp. 119:13-22.

**II.      Plaintiff's Flight By Vehicle and The Deadly Force Used Against Det. Gasperetti**

26. Plaintiff then put the vehicle in drive and began driving forward with Detective Gasperetti still attempting to pull plaintiff out of the vehicle. Id. at pp. 116:19-25 through 117:1-9.

27. Plaintiff accelerated the vehicle and was driving between four to ten miles per hour at this time. Id. at pp. 137:8-13.

28. Officer Arlistico was not inside of the vehicle. Id. at pp. 118:3-24; 122:7-25 through 123:1-12.

29. Detective Gasperetti, with the driver's side door still open, was on top of plaintiff with the base of his left arm around plaintiff's neck, in an attempt to get plaintiff to stop

the vehicle and pull plaintiff out of the vehicle. Id. at pp. 123:9-25 through 124:1-7; and 128:18-25 through 130:1-7.

30. Plaintiff alleges that Detective Gasperetti also struck plaintiff on the left side of his face, with closed fist punches, approximately three times in an attempt to get plaintiff to stop the vehicle. Id. at pp. 123:9-25; 129:14-25 through 131:1-16.

31. Detective Gasperetti did not hit or strike plaintiff beyond the three closed fist punches alleged by plaintiff while they were both inside of the moving vehicle. Id. at pp. 131:17-25 through 132:1-7.

32. Plaintiff then crashed the vehicle into a parked car with Detective Gasperetti still inside after driving 10 to 15 feet forward. Id. at pp. 118:3-24; 137:25 through 138:1-5; and 139:11-16.

33. After plaintiff hit the parked car, Detective Gasperetti then placed his two feet back on the pavement and once again began attempting to pull plaintiff out of the vehicle. Id. at pp. 139:17-25 through 140:1-5.

34. Detective Gasperetti also struck plaintiff on the left side of his face approximately two times. Id. at pp. 148:1-25.

35. Plaintiff then put the car in reverse with Detective Gasperetti still attempting to pull plaintiff out of the vehicle. Id. at pp. 139:17-25 through 140:1-5.

36. Plaintiff then put the car in drive with Detective Gasperetti still holding onto him. Id. at pp. 148:1-25.

37. Plaintiff accelerated to a speed of approximately 20 to 30 miles an hour with Detective Gasperetti still inside of the vehicle. Id. at pp. 149:14-25 through 150:1-4.

38. Plaintiff admits that his actions of accelerating the vehicle with Detective Gasperetti inside were reckless. Id. at pp. 135:22-25 through 136:1-6.

39. Detective Gasperetti was giving plaintiff verbal orders to stop the vehicle. Id. at pp. 151:14-17.

40. However, plaintiff did not stop, and instead held Detective Gasperetti down so that Detective Gasperetti could not get the gun out of his holster. Id. at pp. 151: 23-25 through 152:1-14; and 155:6-14.

41. While driving, plaintiff also clipped a black SUV. Id. at pp. 157:7-16.

42. Plaintiff then accelerated the car even faster to 40 to 45 miles per hour with Detective Gasperetti still trapped inside of the vehicle. Id. at pp. 158:19-25 through 159:1-5.

43. Plaintiff admitted during his March 14, 2019 plea allocution that he "dragged" Detective Gasperetti on the pavement from the moving vehicle with intent to cause Detective Gasperetti injury, knowing that such an action would have resulted in Detective Gasperetti fracturing his knee cap. McKinney Decl., Exh. "D," Supreme Court of New York, March 14, 2019 Plea Transcript, D158-D159.

44. However, during plaintiff's July 14, 2020 deposition in this matter, plaintiff testified that he committed perjury multiple times during his March 14, 2019 plea hearing, and now denies that he dragged Detective Gasperetti with the vehicle or attempted to injure him. McKinney Decl., Exh. "C," P. Dep., at pp. 313-330.

45. In further contradiction to plaintiff's previous deposition testimony that Detective Gasperetti only stuck plaintiff approximately three times in the face while the vehicle was in motion, plaintiff then alleged that Detective Gasperetti also hit him approximately one

dozen additional times in the face with his police issued radio while the vehicle was in motion. Id. at pp. 131:17-25 through 132:1-7; and 151:4-25 through 154:1-9.

46. Plaintiff alleges that he was knocked unconscious as a result of Detective Gasperetti striking him in the head with the police issued radio. Id. at pp. 159:6-11.

47. Plaintiff alleges that when he regained consciousness, he was still seated in the driver's seat with the driver's side door open, and that was when he first realized the vehicle had crashed and come to a stop. Id. at pp. 164:8-25 through 165:1-6.

48. Plaintiff alleges that at this point he was bleeding from his face and forehead. Id. at pp. 167:4-12.

49. Plaintiff was not wearing a seatbelt at any point when he was driving the vehicle. Id. at pp. 165:9-23.

50. Plaintiff alleges that he drove a total of approximately three and a half blocks before the vehicle ultimately stopped from the final crash. Id. at pp. 207:2-8.

51. Plaintiff alleges that he has no memory of the impact of the car crash because he was knocked unconscious before the car crashed. Id. at pp. 166:14-16.

52. Plaintiff alleges that when he regained consciousness, he observed Detective Gasperetti, bent over, standing with his hands on his knees approximately two feet from the crashed vehicle. Id. at pp. 168:16-25 through 169:1-14.

53. Plaintiff admits that he would be surprised if Detective Gasperetti was not hurt after plaintiff crashed the vehicle with Detective Gasperetti inside. Id. at pp. 231:6-14.

54. Plaintiff then pushed the driver's side door open and attempted to flee the scene of the crash by running on foot. Id. at pp. 169:23-25 through 170:1-4.

55. Plaintiff ran approximately two feet before he tripped and fell to the ground next to the crashed vehicle. Id. at pp. 173:11-25 through 174:1-24.

56. At the same moment plaintiff tripped, Officer Arlistico arrived on the scene of the crash in a police vehicle. Id. at pp. 173:11-25 through 174:1-24.

57. Plaintiff alleges that while he was lying on the ground, on his stomach, Officer Arlistico then jumped on his back. Id. at pp. 178:17-20; and 183:1-11.

58. Plaintiff tried to get up to run away but Officer Arlistico forced him back down to the ground. Id. at pp. 214:20-25 through 215:1-19.

59. Plaintiff alleges that shortly after, Detective Gasperetti also jumped on plaintiff's back. Id. at pp. Id. at pp. 178:17-22; and 214:20-25 through 215:1-4.

60. Plaintiff alleges that he couldn't breathe and was attempting to push himself up for air. Id. at pp. 179:17-25.

61. Plaintiff was then placed in handcuffs. Id. at pp. 179:13-22.

62. Plaintiff alleged at one point in his deposition that while placed in handcuffs, Officer Arlistico hit him in the head with a police issued radio and Detective Gasperetti hit him with closed fist punches. However, plaintiff contradicted himself at another point in his deposition, and testified that Officer Arlistico and Detective Gasperretti allegedly beat him in that manner while plaintiff was "uncuffed." Id. at pp. 180:1-9; and 217:18-24.

63. Plaintiff does not recall the number of times Detective Gasperetti allegedly hit him with closed fist punches nor can he provide an approximate range for the number of times he was allegedly hit. Id. at pp. 221:10-16.

64. While plaintiff alleges that Officer Arlistico hit him "numerous" times with a police issued radio plaintiff cannot provide an approximate number for the times he was allegedly hit. Id. at pp. 223:13-25 through 224:1-2.

65. Plaintiff alleges that within minutes he was then knocked unconscious a second time and does not recall what occurred after that. Id. at pp. 223:3-12.

66. Plaintiff alleges that the next thing he remembers after being knocked unconscious is waking up, still lying on his stomach, to see Officer Arlistico to his left and Detective Gasperetti to his right, lying next to him trying to catch their breath, and other police officers arriving on the scene. Id. at pp. 227:25 through 228:1-12.

67. Detective Gasperetti and Officer Arlistico did not physically touch plaintiff at any point after plaintiff regained consciousness. Id. at pp. 233:1-8.

68. An ambulance then arrived on the scene. Id. at pp. 232:9-17.

69. Detective Gasperetti and Officer Arlistico got into a separate ambulance. Id. at pp. 232:9-17.

70. Plaintiff alleges that after Detective Gasperetti and Officer Arlistico left the scene in an ambulance, an unidentified officer placed his foot directly across plaintiff's neck and pressed his body weight against plaintiff, for approximately five to six minutes, in an attempt to kill plaintiff. Id. at pp. 233: 9-25 through 234:1-22; and 235:1-4.

71. Plaintiff claims he was able to tense his body and pull his neck away from under the undefined officer's boot. Id.

### III.    Plaintiff's July 26, 2017 Medical Treatment at Jamaica Hospital

72. Plaintiff was placed in an ambulance and transported to Jamaica Hospital on July 26, 2017 following the crash. Id. at pp. 240:23-25 through 241:1-5.

73. Plaintiff further claims that once at the hospital, two unidentified detectives along with an unidentified police officer, <u>not</u> Detective Gasperetti or Officer Arlistico, ripped off plaintiff's neck-brace, pressed their fingers inside of plaintiff's various open wounds, slapped plaintiff in the face, and choked plaintiff out in an attempt to kill him.  <u>Id</u>. pp. at. 247:15-25 through 252:1-20.

74. Plaintiff cannot recall the names or even provide a basic description, such as the race or ethnicity, of the three officers who allegedly assaulted him at the hospital. <u>Id</u>.

75. Plaintiff claims the assault occurred in an area of the hospital that was partitioned off only by a curtain. <u>Id</u>. at pp. 279:2-22.

76. Plaintiff claims he could see nurses and other patients while this alleged assault occurred and that he called out for help. <u>Id</u>. at pp. 279:2-22.

.77. Plaintiff claims that despite his cries for help, no medical staff or other individuals in the hospital attempted to stop the alleged assault by the three unidentified officers. <u>Id</u>. at pp. 279:2-22.

78. Plaintiff did not have any interactions with Detective Gasperetti or Officer Arlistico while at Jamaica Hospital. <u>Id</u>. at. pp. 241:16-21.

79. At Jamaica Hospital plaintiff received full CT and X-ray scans which came back negative for fractures and dislocations. McKinney, Decl., Exh. "G", Plaintiff's Jamaica Meds., at D195, and D205-D214.

80. Plaintiff was diagnosed to have multiple abrasions to his face and right upper extremity as well as a sprain to his right hand and ankle, which did not require stitches. <u>Id</u>. at D193.

81. Plaintiff's Jamaica Hospital medical records note the severity of plaintiff's pain to be "mild" and also note "no back pain," "no bruising," "no chest pain," "no neck pain," and "no loss of consciousness." Id. at D189.

82. Plaintiff's Jamaica Hospital medical records note that plaintiff only stated to medical staff that he was in a motor vehicle accident. Id. at D189.

83. There are no statements or notations in plaintiff's Jamaica Hospital medical records that indicate that plaintiff ever told medical staff that officers allegedly assaulted him in any manner. See McKinney, Decl., Exh. "G", Plaintiff's Jamaica Meds., at D183-D231.

## IV.    Defendants' Medical Treatment Following The July 26, 2017 Incident

84. Detective Gasperetti was also transported to Jamaica Hospital on July 26, 2017 following the vehicle crash. McKinney Decl., Exh. "H," "Gasperetti Jamaica Meds.," D1406-1453.

85. Detective Gasperetti also sought additional medical treatment at North Shore university Hospital on or about August 17, 2017. Exh. "J," "Gasperetti North Shore Meds., D1480-D1554.

86. Detective Gasperetti was ultimately diagnosed to have a fractured right knee cap, ruptured patella tendon, and serious chest contusion, along with other injuries, including severe pain limiting the range of motion in his knee. McKinney Decl., Exh. "H," Gasperetti Jamaica Meds., D1406- 1453; see also McKinney Decl., Exh. "J," Gasperetti North Shore Meds., D1480-D1554.

## V.    Plaintiff's Prosecution And Conviction

87. Plaintiff was indicted under indictment number 01786-2017 for violating several New York State Penal Laws including § 110/125.27-1, Attempted Murder in the First

Degree; § 120.10-3, Assault in the First Degree; § 205.30, Resisting Arrest; VTL § 1172-A, Failed to Stop for a Stop Sign; and VTL § 375-40-B, Equipment Violation/ Stop Lights. See McKinney Decl., Exh. "B," Criminal Court Complaint, D7-D18; see also McKinney Decl., Exh. "E," Certificate of Disposition, D5.

88. On March 14 and 18 of 2019 plaintiff pled guilty to assault in the first degree, resisting arrest, and identity theft in the second degree. See McKinney Decl., Exh, "D," Supreme Court of New York, March 14 and 18, 2019 Plea Transcripts, D153-D176. See also, McKinney Decl., Exh. "E," Certificate of Disposition.

89. However, during plaintiff's July 14, 2020 deposition, plaintiff testified that he committed perjury multiple times during his March 14, 2019 plea hearing, and now denies that he committed assault in the first degree or resisted arrest on July 26, 2017. McKinney Declaration, Exh. "C," at pp. 313-330.

90. Plaintiff testified at his July 14, 2020 deposition that these false sworn statements were due to his attorney pressuring him to plea, despite the fact that on March 14, 2019 plaintiff testified that he was satisfied with his representation and was pleading guilty of his own free will. Id.; see also McKinney Decl., Exh. "D," Supreme Court of New York, March 14, 2019 Plea Transcript, at D156-157.

91. Upon plaintiff's guilty plea, the judge sentenced plaintiff, as a second time felony offender, to thirteen and a half years in jail with five years post-release supervision. See McKinney Decl., Exh, "D," Supreme Court of New York, March 14 and 18, 2019 Plea Transcripts, D153-D176. See also, McKinney Decl., Exh. "E," Certificate of Disposition.

Dated: New York, New York
       September 9, 2020

                               JAMES E. JOHNSON
                               Corporation Counsel of the City of New York
                               *Attorney for Defendants*
                               100 Church Street, Room 3-213
                               New York, New York 10007
                               (212) 356-2012

                By:     *Morgan C. McKinney, Esq.*
                               MORGAN C. MCKINNEY, ESQ.
                               Assistant Corporation Counsel

cc:    **BY MAIL**
        Kyle Freistat (DIN #06-R-4125)
        a.k.a. Joel Burnett (DIN # 19-A-1353)
        *Pro Se Plaintiff*
        Great Meadow Correctional Facility
        11739 State Route 22, P.O. Box 51
        Comstock, NY 12821-0051