UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x

KYLE FREISTAT,

                Plaintiff,

        -against-

DANIEL GASPERETTI and ANTHONY
ARLISTICO,

             Defendants.

-----------------------------------------------------x

**MEMORANDUM AND ORDER**

17-CV-5870 (RPK) (LB)

RACHEL P. KOVNER, United States District Judge:

    Plaintiff Joel Burnett, proceeding *pro se* under the name Kyle Freistat, sues Detective Daniel Gasperetti and Police Officer Anthony Arlistico of the New York Police Department under 42 U.S.C. § 1983. Read liberally, the complaint asserts a claim for excessive force. Defendants move for summary judgment. Defendants' motion is granted in part and denied in part. Defendants are entitled to summary judgment on plaintiff's allegations that defendants used excessive force before plaintiff was handcuffed. Summary judgment is denied as to allegations that defendants used excessive force after plaintiff was handcuffed.

## BACKGROUND

    The following background comes from defendants' Rule 56.1 statements of facts and attached documents, depositions, and declarations. *See* Fed. R. Civ. P. 56(c)(1); Local Rule 56.1. Plaintiff has not disputed defendants' Rule 56.1 statement or filed a counterstatement. Local Rule 56.1 deems admitted each "numbered paragraph in [a] statement of material facts . . . unless specifically controverted by a correspondingly numbered paragraph" in an opposing statement. "*Pro se* litigants are . . . not excused from meeting the requirements of Local Rule 56.1." *Liverpool v. Davis*, 442 F. Supp. 3d 714, 723 (S.D.N.Y. 2020) (internal quotations omitted). Accordingly,

1

plaintiff's "failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible." *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009).

### A.   Factual Background

#### 1.   The Investigative Stop and Arrest

On July 26, 2017, Mr. Freistat was driving alone in Jamaica, New York, when he was pulled over by Detective Gasperetti and Officer Arlistico. *See* Defs.' Statement Pursuant to Local Civil Rule 56.1 ¶¶ 1-2 (Dkt. #101) ("Defs.' Statement"); Dep. of Joel Burnett a/k/a Kyle Freistat 37:14-15, 69:7-12 (Dkt. #102-3) ("Freistat Dep."). Detective Gasperetti approached the driver's side of the vehicle and Officer Arlistico approached the passenger's side. *See* Defs.' Statement ¶ 4; Freistat Dep. 76:18-20. The officers informed Mr. Freistat that they pulled him over because he had run a stop sign and because his taillight was out. *See* Defs.' Statement ¶ 8; Freistat Dep. 86:2-8.

When Detective Gasperetti asked for Mr. Freistat's license, Mr. Freistat handed him a forged license from the Virgin Islands under the name DeAndre Buchonan. *See* Defs.' Statement ¶ 10; Freistat Dep. 88:11-89:3. Mr. Freistat also handed him a card containing a social security number under the name DeAndre Buchonan. *See* Defs.' Statement ¶ 14; Freistat Dep. 91:2-6. After running the license and social security number, Detective Gasperetti informed Mr. Freistat that he had an outstanding warrant. *See* Defs.' Statement ¶¶ 16-17; Freistat Dep. 95:11-96:2.

The officers asked Mr. Freistat to get out of the vehicle approximately four times, but plaintiff refused. *See* Defs.' Statement ¶ 23; Freistat Dep. 116:13-18. After the fourth refusal, Detective Gasperetti started pulling on plaintiff's upper left arm with both hands to remove him from the vehicle. *See* Defs.' Statement ¶ 24; Freistat Dep. 116:19-117:11. In response, plaintiff

planted his feet and held his body in the car to prevent Detective Gasperetti from removing him. *See* Defs.' Statement ¶ 25; Freistat Dep. 119:18-22.

Mr. Freistat then put the vehicle in drive and started to accelerate. *See* Defs.' Statement ¶ 26; Freistat Dep. 118:9-25. At this time, Officer Arlistico was not inside of the vehicle, *see* Defs.' Statement ¶ 28; Freistat Dep. 118:19-24, but Detective Gasperetti was on top of Mr. Freistat with the driver's side door still open, *see* Defs.' Statement ¶ 29; Freistat Dep. 122:19-25. As the vehicle reached four to ten miles per hour, *see* Defs.' Statement ¶ 27; Freistat Dep. 137:8-13, Detective Gasperetti wrapped his left arm around Mr. Freistat's neck to get Mr. Freistat to stop the vehicle, *see* Defs.' Statement ¶ 29; Freistat Dep. 124:1-7, 128:25-129:5. Plaintiff testified that, during this time, Detective Gasperetti punched Mr. Freistat on the left side of his face approximately three times. *See* Defs.' Statement ¶ 30; Freistat Dep. 130:3-23.

Mr. Freistat drove the vehicle ten to fifteen feet forward and then crashed into a parked car. *See* Defs.' Statement ¶ 32; Freistat Dep. 138:1-5, 119:11-16. Detective Gasperetti then stepped out of the car and again attempted to pull Mr. Freistat from the vehicle. *See* Defs.' Statement ¶ 33; Freistat Dep. 139:19-25. He also struck Mr. Freistat on the left side of his face approximately two more times. *See* Defs.' Statement ¶ 34; Freistat Dep. 148:1-25.

Mr. Freistat then put the vehicle in reverse and began to back up. *See* Defs.' Statement ¶ 35; Freistat Dep. 140:3-5. In response, Detective Gasperetti again placed two feet in the vehicle and held Mr. Freistat. *See* Defs.' Statement ¶ 35; Freistat Dep. 140:3-5. Mr. Freistat then put the vehicle in drive and began to accelerate. *See* Defs.' Statement ¶ 37; Freistat Dep. 149:21-150:7. As the vehicle reached twenty to thirty miles per hour, Detective Gasperetti—still in the car—managed to close the driver's side door. *See* Defs.' Statement ¶ 37; Freistat Dep. 149:21-150:7.

Inside the vehicle, Detective Gasperetti ordered Mr. Freistat to stop the vehicle, but Mr. Freistat did not do so.  *See* Defs.' Statement ¶¶ 39-40; Freistat Dep. 151:14-17.  According to Mr. Freistat, Detective Gasperetti hit him in the face with his police radio approximately a dozen times. *See* Defs.' Statement ¶ 45; Freistat Dep. 152:25-153:6.  Mr. Freistat stated that he let go of the steering wheel with his right arm and held Detective Gasperetti tightly so that the officer could not get his gun out of his holster.  *See* Defs.' Statement ¶ 40; Freistat Dep. 152:6-17.

As the vehicle reached forty to forty-five miles per hour, *see* Defs.' Statement ¶ 42; Freistat Dep. 158:19-25, Mr. Freistat clipped a Sport Utility Vehicle, *see* Defs.' Statement ¶ 41; Freistat Dep. 157:8-11.  Plaintiff alleges that Detective Gasperetti then rendered him unconscious by striking him in the head with his radio.  *See* Defs.' Statement ¶ 46; Freistat Dep. 159:6-11.

The vehicle crashed a second time.  *See* Defs.' Statement ¶ 50; Freistat Dep. 207:2-8.  When Mr. Freistat regained consciousness, he was still seated in the driver's seat.  *See* Defs.' Statement ¶ 47; Freistat Dep. 164:13-14.  He was bleeding from his face and forehead.  *See* Defs.' Statement ¶ 48; Freistat Dep. 167:4-12.  He observed Detective Gasperetti bent over, standing with his hands on his knees approximately two feet away from the crashed vehicle.  *See* Defs.' Statement ¶ 52; Freistat Dep. 168:16-169:14.

Mr. Freistat pushed the driver's door open and started to run.  *See* Defs.' Statement ¶ 54; Freistat Dep. 169:24-170:25.  But he only made it two feet before he tripped and fell.  *See* Defs.' Statement ¶ 55; Freistat Dep. 173:11-174:24.  Mr. Freistat testified that, at the same time, Officer Arlistico arrived at the scene of the crash.  *See* Defs.' Statement ¶ 56; Freistat Dep. 173:15-174:2. He further testified that, as he attempted to get up, Officer Arlistico jumped on top of him.  *See* Defs.' Statement ¶¶ 57-58; Freistat Dep. 174:1-2, 178:19-20.  Detective Gasperetti then jumped

4

on top of him as well.  *See* Defs.' Statement ¶ 59; Freistat Dep. 178:19-25.  As a result, Mr. Freistat testified that he was not able to breathe.  *See* Defs.' Statement ¶ 60; Freistat Dep. 179:13-22.

Mr. Freistat was handcuffed.  *See* Defs.' Statement ¶ 61; Freistat Dep. 179:13-22.  Mr. Freistat testified that defendants then started to beat him again.  *See* Defs.' Statement ¶ 62; Freistat Dep. 179:23-180:15, 217:18-24.  He testified that at this time, Officer Arlistico beat him with his police-issued radio, and Detective Gasperetti hit him with closed-fist punches.  *See* Defs.' Statement ¶¶ 63-64; Freistat Dep. 179:23-180:15.  Mr. Freistat testified that, as a result, he was knocked unconscious again.  *See* Defs.' Statement ¶ 65; Freistat Dep. 223:3-12.  Other police officers then arrived on the scene.  *See* Defs.' Statement ¶ 66; Freistat Dep. 227:25-228:12.

Mr. Freistat was taken to Jamaica Hospital in an ambulance.  *See* Defs.' Statement ¶ 72; Freistat Dep. 240:23-241:5.  Detective Gasperetti and Officer Arlistico were taken to Jamaica Hospital in another ambulance.  *See* Def.'s Statement ¶ 69; Freistat Dep. 232:16-17.  Hospital records reflect that Mr. Freistat was diagnosed as having multiple abrasions to his face and right upper extremity as well as a sprain to his right hand and ankle, *see* Defs.' Statement ¶ 80; Decl. of Morgan McKinney ("McKinney Decl."), Ex. G, at D193 (Dkt. #102-7), but his scans came back negative for fractures or dislocations, *see* McKinney Decl., Ex. G, at D195, D205-D214.  Hospital records reflect that Detective Gasperetti was ultimately diagnosed as having a fractured kneecap, ruptured patella tendon, and serious chest contusion, along with severe pain limiting the range of motion in his knee.  *See* Def.'s Statement ¶ 86; McKinney Decl., Ex. H, at D1406-1453 (Dkt. #102-8).

### 2.    State Proceedings

Mr. Freistat was indicted for attempted murder in the first degree, assault in the first degree, resisting arrest, failing to stop for a stop sign, and other violations.  *See* Def.'s Statement ¶ 87; McKinney Decl., Ex. B, at D7-D18 (Dkt. #102-2); McKinney Decl. Ex. E, at D5 (Dkt. #102-5).

Mr. Freistat pleaded guilty to assault in the first degree, resisting arrest, and identity theft in the second degree. *See* Def.'s Statement ¶ 88; McKinney Decl., Ex. D, at D153-D176 (Dkt. #102-4); McKinney Decl., Ex. E. For those crimes, Mr. Freistat was sentenced to thirteen and a half years in jail with five years of post-release supervision. *See* Def.'s Statement ¶ 91; McKinney Decl., Ex. D, at D153-D176; McKinney Decl., Ex. E.

### B.    Procedural History

Mr. Freistat brought this action under 42 U.S.C. § 1983. *See* Compl. at 2 (Dkt. #2). He also applied for *in forma pauperis* status. *See* IFP Mem. & Order at 1 (Dkt. #7).

Judge Roslynn R. Mauskopf, the then-assigned district judge, construed Mr. Freistat's complaint as alleging that Detective Gasperetti and Officer Arlistico used excessive force against Mr. Freistat. *Ibid.* She determined that the excessive-force claim against those officers could proceed. *Ibid.* She dismissed plaintiff's additional claims against the New York City Police Department, New York Department of Correction, and Department of Justice. *Ibid.*

Defendants have now moved for summary judgment. *See* Defs.' Notice to *Pro Se* Litigant 1 (Dkt. #100); Defs.' Mem. of L. in Supp. of Mot. for Summ. J. 3 (Dkt. #104).

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). "A fact is material if it might affect the outcome of the suit under governing law." *Ibid.* In assessing the record, I consider cited "depositions, documents, electronically stored information, affidavits or declarations, stipulations[,] . . . admissions, [and] interrogatory answers[.]" Fed. R. Civ. P.

56(c)(1)(A). I view "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010).

Plaintiff proceeds *pro se*. A court "is ordinarily obligated to afford a special solicitude to *pro se* litigants . . . particularly where motions for summary judgment are concerned." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (quotation marks and citations omitted). A court must "liberally construe" documents "submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017).

## DISCUSSION

Like Judge Mauskopf, I construe plaintiff's complaint as pleading a claim of excessive force against Detective Gasperetti and Officer Arlistico. The complaint mentions other constitutional provisions, but even on a liberal reading, it does not contain non-conclusory allegations to support claims beyond excessive force. *See* Compl. at 4 (stating that plaintiff's "constitutional rights were violated ranging from the 4th to 14th amendments[,] from illegal search and seizure to due process amendments" but not providing additional detail). As to that excessive-force claim, defendants' motion for summary judgment is granted in part and denied in part. Defendants are entitled to summary judgment on plaintiff's allegations that defendants used excessive force before plaintiff was handcuffed. Summary judgment is denied as to allegations that defendants used excessive force after plaintiff was handcuffed. *Cf. Tracy*, 623 F.3d at 95-99 (considering whether officers used excessive force in sequential portions of encounter).

### I.   Defendants are entitled to summary judgment on plaintiff's allegations that defendants used excessive force before he was handcuffed.

Defendants are entitled to summary judgment on plaintiff's claim that officers used excessive force insofar as it relates to the officers' alleged conduct before plaintiff was handcuffed.

In his deposition, plaintiff alleges that during that period, Detective Gasperetti (i) pulled on plaintiff's upper left arm with both hands to remove him from his vehicle; (ii) jumped on top of plaintiff and wrapped his arm around plaintiff's neck; (iii) punched plaintiff three times before plaintiff's car crashed for the first time; and (iv) hit plaintiff with his police radio approximately a dozen times before plaintiff's car crashed a second time.  Plaintiff also alleges that after the second crash, plaintiff testified that Detective Gasperetti and Officer Arlistico (v) jumped on plaintiff until he was handcuffed.  On the undisputed facts in this case, these uses of force were reasonable, and officers would be shielded by qualified immunity regardless.

### A.     Defendants used reasonable force before plaintiff was handcuffed.

Even assuming Mr. Freistat's account to be true, no reasonable jury could conclude that defendants' force against plaintiff was objectively unreasonable before he was handcuffed.

Whether officers used excessive force depends on whether their use of force was "'objectively reasonable' in light of the facts and circumstances confronting" them.  *Graham v. Connor*, 490 U.S. 386, 397 (1989) (quoting *Scott v. United States*, 436 U.S. 128, 137-39 (1978)). This test balances "the nature and quality of the intrusion" against "the countervailing governmental interests at stake."  *Id.* at 396 (internal quotations omitted).  Relevant factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Ibid.*  The record is assessed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Ibid.*  Given "the fact-specific nature of the inquiry on an excessive force claim, granting summary judgment against a plaintiff . . . is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable."  *Lennox v. Miller*, 968 F.3d 150, 155 (2d Cir. 2020) (quoting *Rogoz v. City of Hartford*, 796 F.3d 236, 246 (2d Cir. 2015)).

No reasonable factfinder could conclude that the use of force Mr. Freistat alleges occurred before he was handcuffed was objectively unreasonable. First, the officers were attempting to subdue someone who was repeatedly failing to comply with their instructions. Plaintiff concedes that officers asked him to get out of the vehicle four times, but he refused. *See* Defs.' Statement ¶ 23; Freistat Dep. 116:13-18. He concedes that he resisted Detective Gasperetti's attempts to remove him from his car. *See* Defs.' Statement ¶ 25; Freistat Dep. 119:18-22. He concedes that once he started to drive off, Detective Gasperetti ordered him to stop the vehicle, but he did not. *See* Defs. Statement ¶¶ 39-40; Freistat Dep. 151:14-17. Indeed, he acknowledges that he pleaded guilty to resisting arrest. *See* Def.'s Statement ¶ 88; McKinney Decl., Ex. D, at D153-D176; *Rolkiewicz v. City of New York*, 442 F. Supp. 3d 627, 639-40 (S.D.N.Y. 2020). In repeatedly refusing to comply with the officers' orders, Mr. Freistat "exacerbated a 'tense, uncertain, and rapidly evolving' situation that threatened the lives of officers, bystanders, and [Mr. Freistat] himself." *MacLeod v. Town of Brattleboro*, 548 F. App'x 6, 8 (2d Cir. 2013) (quoting *Graham*, 490 U.S. at 397).

Second, the officers were attempting to subdue someone who was "attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *cf. Tracy*, 623 F.3d at 97-98 (granting summary judgment to an officer who jumped on a fleeing suspect). Plaintiff concedes that after refusing to exit his vehicle, he started to drive off. *See* Defs.' Statement ¶ 26; Freistat Dep. 118:9-25. And he concedes that once his car crashed, he tried to run away from the officers. *See* Defs.' Statement ¶ 54; Freistat Dep. 169:24-170:25.

Third, the officers were attempting to subdue someone who posed "an immediate threat to the safety of the officers." *Graham*, 490 U.S. at 396. Plaintiff concedes that as he initially accelerated, he was locked in a struggle with Detective Gasperetti with the driver's door still open.

*See* Defs.' Statement ¶ 29; Freistat Dep. 122:19-25.  Plaintiff concedes that he crashed his vehicle

with Detective Gasperetti in the car.  *See* Defs.' Statement ¶ 32; Freistat Dep. 138:1-5, 119:11-16.

Plaintiff concedes that he accelerated to a greater speed after the first crash, still locked in a struggle

with Detective Gasperetti.  *See* Defs.' Statement ¶ 37; Freistat Dep. 149:21-150:7.  And plaintiff

concedes that he reached up to forty-five miles per hour and crashed the car again.  *See* Defs.'

Statement ¶ 42; Freistat Dep. 158:19-25.  Plaintiff's actions repeatedly placed Detective Gasperetti

in great danger.  "The more precarious a particular situation, the more substantial the force that

can be used." *Johnson v. City of New York*, No. 05-CV-2357 (SHS), 2006 WL 2354815 (E.D.N.Y.

Aug. 14, 2006).  Taking into account all the circumstances here, a reasonable jury could not find

that defendants acted unreasonably in using the force they used to subdue plaintiff.  *Cf. Plumhoff*

*v. Rickard*, 572 U.S. 765, 776-77 (2014) (holding that even deadly force was not unreasonable

where "outrageously reckless driving posed a grave public safety risk"); *Scott v. Harris*, 550 U.S.

372, 386 (2007) (holding that officers' "attempt to terminate [a car] chase by forcing [plaintiff] off

the road was reasonable" because the car chase "posed a substantial and immediate risk of serious

physical injury to others").

### B.   Qualified immunity shields the officers for the force used before plaintiff was handcuffed.

At minimum, qualified immunity would shield the defendants from liability for their

alleged uses of force to subdue Mr. Freistat before he was handcuffed.

Qualified immunity shields officers from liability unless their conduct violated "clearly

established statutory or constitutional rights of which a reasonable person should have known."

*Chamberlain Estate of Chamberlain v. City of White Plains*, 960 F.3d 100, 110 (2d Cir. 2020)

(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  To overcome qualified immunity,

"[t]he contours of the right must be sufficiently clear" at the time of the violation "that a reasonable

official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Because "[u]se of excessive force is an area of the law in which the result depends very much on the facts of each case . . . officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (internal quotations omitted).

The parties point to no precedent that would have informed Detective Gasperetti and Officer Arlistico in July 2017 that they could not use the force they used to subdue plaintiff here under the circumstances.  To the contrary, existing precedent counseled that similar or greater use of force was reasonable when "the risk posed to officer safety appeared to be both real and imminent," *Tracy*, 623 F.3d at 97, and "outrageously reckless driving posed a grave public safety risk," *Plumhoff*, 572 U.S. at 776-77.  At minimum, defendants would therefore be entitled to qualified immunity with respect to allegations that they used excessive force to subdue plaintiff before he was handcuffed.

## II.     Defendants are not entitled to summary judgment on plaintiff's allegations that defendants used excessive force after he was handcuffed.

Defendants are not entitled to summary judgment on plaintiff's claim that defendants used excessive force after he was handcuffed.  Plaintiff has raised a genuine issue of material fact concerning that allegation through his testimony, and it is clearly established that such force would be unreasonable.

### A.     A jury could find that defendants beat plaintiff after he was handcuffed.

Defendants argue that summary judgment is appropriate concerning plaintiff's allegations of violence after plaintiff was handcuffed because no reasonable jury could credit plaintiff's testimony on that point.  But the record reflects a genuine dispute of fact.  Plaintiff testified that after the officers "finally [got] the handcuffs on him," he was "trying to ease up still," and the

officers were "easing [him] down." Freistat Dep. 179:13-25. Plaintiff testified that Officer Arlistico then "beat[] [him] with the radio," and Detective Gasperetti "us[ed] closed fists out of anger and frustration." *Id.* at 180:4-9. And he testified that "all of this took place after [he] was handcuffed." *Id.* at 217:18-24. That "testimony alone" is ordinarily "independently sufficient to raise a genuine issue of material fact." *Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019).

Defendants principally argue that plaintiff's testimony should be discredited as inconsistent. It is true that where a "plaintiff relies almost exclusively on his own testimony," a district court may discount his testimony at summary judgment where it is "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit" the testimony. *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005) (internal quotations omitted). But insofar as plaintiff contradicted himself regarding whether defendants assaulted him after he was handcuffed, jurors could reasonably find that plaintiff simply misspoke. Plaintiff did at one point state that "the second round of beating" took place when he was "on the ground, uncuffed," but he did so when emphasizing that Officer Arlistico used a radio to beat him on the ground while Detective Gasperetti had used a radio to beat him in the car. Freistat Dep. 180:1-8. When asked about the timing directly, plaintiff unequivocally stated that the beating "took place after [he] was handcuffed," and he rejected any suggestion that he intended to say differently. *See* Freistat Dep. 217:18-24. "If there is a plausible explanation for discrepancies in a party's testimony, the court considering a summary judgment motion should not disregard the later testimony because of an earlier account that was ambiguous, confusing, or simply incomplete." *Langman Fabrics v. Graff Californiawear, Inc*., 160 F.3d 106, 112 (2d Cir. 1998).

Defendants further argue that Mr. Freistat's medical records, which reflect only abrasions and a sprain, would foreclose a reasonable jury from finding that officers beat him after he was handcuffed. *See* Defs.' Mem. of L. J. 20-21. But "the seriousness of a plaintiff's injury . . . is not determinative of an excessive force claim." *Sims v. Artuz*, 103 F. App'x 434, 437 (2d Cir. Jul. 6, 2004). "While the absence of serious injury is certainly a matter that the jury can consider in assessing both the reasonableness of the force and potential damages from any misconduct, a district court should not grant summary judgment on this basis alone." *Ketcham v. City of Mount Vernon*, 992 F.3d 144, 150 (2d Cir. 2021). And while the tension between the medical records and plaintiff's own account of the extent of his injuries would surely provide "ammunition for cross-examination," the questions surrounding plaintiff's credibility are for the jury to resolve. *Galberth v. Durkin*, No. 14-CV-115 (BKS) (ATB), 2017 WL 4325774, at *8 (N.D.N.Y. Aug. 31, 2017) (declining to grant summary judgment for defendants on plaintiff's excessive force claims although those claims were "either inconsistent with or unsupported by medical records," *id.* at *7), *report and recommendation adopted*, No. 14-CV-115 (BKS) (ATB), 2017 WL 4326076 (N.D.N.Y. Sept. 27, 2017). It remains "for the fact-finder to assess whether and to what extent the medical evidence strips" plaintiff's testimony regarding excessive force "of its credibility." *Pierre-Antoine v. City of New York*, No. 4-CV-6987 (GEL), 2006 WL 1292076, at *5 (S.D.N.Y. May 9, 2006).

**B.      It is clearly established that officers may not beat a restrained arrestee who is not resisting.**

Taking plaintiff's account of officers' conduct as true, defendants are not entitled to summary judgment as to excessive force after plaintiff was handcuffed. It has long been "well established . . . that the use of entirely gratuitous force is unreasonable and therefore excessive," *Tracy*, 623 F.3d at 99 n.5, and that "it is impermissible to use significant force against a restrained

arrestee who is not actively resisting," *Lennox v. Miller*, 968 F.3d 150, 157 (2d Cir. 2020); *see Ketcham v. City of Mount Vernon*, 992 F.3d 144, 152 n.2 (2d Cir. 2021); *see also, e.g.*, *Scott v. City of New York*, No. 16-CV-834 (NGG) (ST), 2020 WL 208915, at *9 (E.D.N.Y. Jan. 14, 2020). Once an arrestee is cuffed and no longer resisting, "even a minor use of force may be found to have been unreasonable." *Adedeji v. Hoder*, 935 F. Supp. 2d 557, 568 (E.D.N.Y. 2013) (internal quotations omitted). That is so even if officers were justified in using force to subdue plaintiff before he was handcuffed. *See Tracy*, 623 F.3d at 96-97 & n.5. Accordingly, a genuine dispute of material fact exists as to whether officers violated clearly established law through excessive force after plaintiff was handcuffed. Summary judgment is denied on plaintiff's claim that officers used excessive force after handcuffing him.

## CONCLUSION

Defendants' motion for summary judgment is granted in part and denied in part. Defendants are entitled to summary judgment on plaintiff's allegations that defendants used excessive force before he was handcuffed. Summary judgment is denied as to allegations that defendants used excessive force after he was handcuffed.

SO ORDERED.

  /s/  Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated:        September 30, 2021
              Brooklyn, New York